### PAGE et al. v. MOFFETT.

(Circuit Court, D. New Jersey. February 7, 1898.)

1. OFFICERS—REMOVALS—EQUITABLE INTERFERENCE.
   Under Rev. St. § 3148, providing that the collector of internal revenue may appoint his deputies and remove them by giving such notice as the commissioner of internal revenue may prescribe, the rules of the commissioner have no such authority as law that a deputy collector can invoke the equitable interference of the courts to restrain his removal in violation of them.

2. SAME—CIVIL SERVICE.
   Neither Rev. St. § 1753, nor the civil service act of January 16, 1883, puts any restrictions upon the power of removal from appointive offices except for refusal to contribute to political funds or neglect to render political service; hence presidential rule 11, relating to the civil service, and providing (as amended July 27, 1897) that no removal shall be made without giving the accused notice and an opportunity to make defense, has no such authority at law as confers upon the holder of an office a vested right thereto, with the right to invoke the equitable power of the courts to restrain his removal therefrom in violation of such rule.

This was a bill by R. Harry Page and others against Isaac Moffett to enjoin the removal of complainants from their positions as deputy collectors of internal revenue.

John L. Semple, for complainants.
Frederick A. Rex, for defendant.

KIRKPATRICK, District Judge. The complainants filed their bill against the defendant, Isaac Moffett, the collector of internal revenue of the First district of New Jersey, praying that he be restrained from removing them from the offices of deputy collectors of internal revenue, to which they had been appointed by James Butcher, at one time collector of internal revenue for said district, and whose office had been vacated by the appointment of his successor, the defendant. The bill alleges that the complainants are officers of the United States, appointed by the collector for an undefined term of service; that the office is one within the classified service, and subject to the provisions of an act entitled "An act to regulate the civil service of the United States," approved January 16, 1883; and that, under the rules and regulations promulgated by the president of the United States, they

cannot be removed therefrom except for cause and upon written charge filed, of which they should have had full notice and an opportunity to make defense. They also in their bill allege that no cause for their removal has been assigned, nor has any notice thereof been given them, nor any opportunity afforded them to make defense, and they charge that the removal is made solely for political reasons, contrary to the true intent and meaning of the civil service act, and the various rules and regulations promulgated by the president of the United States under the authority thereof, and section 1753 of the Revised Statutes of the United States. The bill, therefore, prays for an injunction restraining the collector of internal revenue from removing the complainants from office, inasmuch as such action is contrary to law.

Deputy collectors of internal revenue are appointed under section 3148 of the Revised Statutes of the United States (Rev. St. p. 603), and the provision in regard to the same is as follows:

"Each collector shall be authorized to appoint, by an instrument in writing, under his hand, as many deputies as he may think proper, to be by him compensated for their services; to revoke any such appointment, giving such notice thereof as the commissioner of internal revenue may prescribe."

That the persons so appointed deputies are officers of the United States need not, for the purposes of this application, be denied, nor does it seem open to question that the power of their removal rests with the appointing power, the collector, subject to such requirements as to notice as the commissioner of internal revenue may prescribe. These rules of the commissioner of internal revenue, if any there be, cannot have the force and effect of law, nor would a failure to comply with them justify the interference of a court of equity. U. S. v. Eaton, 144 U. S. 677, 12 Sup. Ct. 764. The power of removal which by the act vested in the appointing power, subject though it be to certain limitations, cannot be reviewed by an appeal to the courts. The result would be a breaking down of all discipline in every administrative department of the government.

But the complainants insist that the office of deputy collector of internal revenue is in the "classified service," and subject to the provisions of what is called the "Civil Service Act," and the rules and regulations promulgated by the president of the United States in respect thereto, and particularly rule 11, as amended July 27, 1897. "In the exercise of power vested in him by section 1753 of the Revised Statutes of the United States, and an act to regulate and improve the civil service of the United States, approved January 16, 1883," the president of the United States, under date of November 2, 1896, promulgated certain rules for the regulation of the civil service, none of which, however, prohibited removals from office except for political or religious opinions; and on July 27, 1897, by the same authority, rule 11, on which complainants rely, was amended so as to read as follows:

"No removal shall be made from any position subject to competitive examination except for just cause filed with the head of department or other appointing officer and of which the accused shall have full notice and an opportunity to make defense."

It will aid us in determining the force and effect to be given to these presidential rules and regulations to look at the power which is vested

in the president by section 1753 of the Revised Statutes and the act of January 16, 1883, known as the "Civil Service Act," under which they were professedly issued.    The former authorizes "the president to prescribe such regulations for the admission of persons into the civil service of the United States as may best promote the efficiency thereof." It nowhere makes mention of removal.    The civil service act merely provides the machinery for fair and suitable examinations, by which there may be procured a list of persons properly qualified to perform the duties of the several offices of the government, and from which those intrusted with the duty of appointment should make their selection.    Its object was to make more efficient the public service, by limiting the power of appointment to a class of qualified applicants; to take away the right or privilege of any one to nominate persons whose fitness was purely political; to provide for each vacant office in the public service, as it occurred, some person who had in a competitive examination shown himself best adapted to the discharge of its duties; that, having so obtained his office, this person was not to be obliged to contribute to any political fund or render any political service, nor to be subject to removal because he failed to do so, nor because he refused to make contributions of money or other valuable thing for any political purpose.    The act saves to persons honorably discharged from the military or naval service of the United States the preferences conferred upon them in former acts, and reserves to the president any authority not inconsistent with the act conferred in section 1753 of the Revised Statutes.    Except as mentioned above, the act puts no restriction upon the power of removal.    It leaves the appointing power as free as before its passage to make removals at will, save only for refusal to contribute to political funds or neglect to render political service.

In prescribing regulations to promote the efficiency of the public service, the president may, no doubt, promulgate rules relating to the removal of persons in office which shall be observed by his subordinates, in order that there may be a harmony of action throughout the several departments of the government of which he is the head, and he may in various ways compel obedience to these rules by his subordinates. He may make these rules accord with his own views of the proper administration of the law, he may modify or even revoke them to-day, and he may change them from time to time, at his pleasure.    They cannot, therefore, be regarded as laws which can only be repealed by the joint action of the legislative and executive departments of the government.    While these rules and regulations may have the force and effect of law upon subordinate administrative officers, they cannot give to office holders vested rights in their offices, nor can a court of equity regard them as conferring property rights which it is within their province to protect.    That a court of equity is limited to the protection of rights of property clearly appears in Re Sawyer, 124 U. S. 200, 8 Sup. Ct. 482, where Mr. Justice Gray, speaking for the supreme court, says: "The office and jurisdiction of a court of equity, unless enlarged by express statute, are limited to the protection of rights of property." And Mr. Chief Justice Fuller, speaking for the United States circuit court of appeals in World's Columbian Exposition v. U.

S., 18 U. S. App. 159, 6 C. C. A. 71, and 56 Fed. 667, reiterates the doctrine in the same words, adding thereto: "The court is conversant only with questions of property, and the maintenance of civil rights, and exercises no jurisdiction in matters merely political, illegal, criminal, or immoral." In the Sawyer Case, supra, the court says that "a public office is not such a property right as will give the court jurisdiction," and "that to sustain a bill in equity to restrain the removal of public officers is to invade the domain of the courts of common law or the executive or administrative departments of the government." The restraining order heretofore granted will be dissolved, and the motion for injunction denied.