MaddeN, Judge^
delivered the opinion of the court:
The plaintiff, asserting that his purported discharge on January 8, 1954, from his position as a Deputy Collector of Internal Revenue was illegal and invalid, sues for the salary he would have received if he had not been discharged. The Government has moved to dismiss the plaintiff’s petition on the ground that it appears from the available documents that there was no procedural defect in relation to the discharge, and that the merits of the grounds for the discharge should not be reviewed by the court.
The plaintiff began his work as a Deputy Collector on November 1,1942, in New York. In 1947 he was transferred to a collection district which had its offices in Newark, New Jersey. In March of 1953 the Bureau of Internal Revenue received a complaint from one William Yerderosa that the plaintiff had induced him to be a co-signer with the plaintiff *19 on a note for $792 payable to the Chemical Bank and Trust Company of New York City. The note had been given in January 1952 to obtain money for the plaintiff to pay another note on which he had defaulted, for which default his automobile had been seized. When the note to Chemical Bank came due in June 1952, the plaintiff did not pay it. The bank obtained a judgment against the plaintiff and Verderosa, and Verderosa was obliged to pledge his life insurance policies to secure payment of the judgment and to pay off the judgment in instalments. Verderosa of course called upon the plaintiff to pay the note and the judgment, but the plaintiff did not pay or make any arrangement to pay Verderosa.
The Internal Revenue Inspection Service conducted an investigation of the Verderosa complaint and on August 19, 1953, it issued a letter preferring a charge against the plaintiff as follows:
Charge 1 — Violation of Section 30 of the pamphlet entitled “Rules of Conduct and Other Instructions for Employees of the Internal Revenue Service” March 1952 edition (Section 34, July 1944 edition), which states in part, “Employees who, without just cause persistently refuse or habitually neglect to pay personal and family debts will be disciplined.”
The letter said that the basis of the charge was that the plaintiff had defaulted on the $792 note and had not repaid nor evidenced any intention to repay Mr. Verderosa. It said that the intention of the Revenue Service was to discharge the plaintiff or otherwise discipline him. It advised the plaintiff of his right to reply to the charge personally and in writing.
On August 25 the plaintiff replied in writing, describing his financial difficulties and the reasons for them. ITe said that he had made several promises to Mr. Verderosa but had been unable to keep them. He asked for indulgence.
On December 29 he was notified in writing that he would be discharged on January 8, 1954, and that, under the Treasury’s grievance procedure, he might appeal in writing to the Director of Personnel, Treasury Department, in Washington. The plaintiff employed counsel and an appeal was taken. The appeal pointed to the plaintiff’s long and un *20 blemished record of Government service, with uniformly high efficiency ratings. It questioned the validity of the rule of the Internal Kevenue Service, the violation of which was the basis of the charge against the plaintiff. It urged that in any event the penalty of dismissal was unduly harsh.
The Acting Director of Personnel replied to the plaintiff, quoting Treasury Department Personnel Circular No. 139, dated June 17,1949, which said:
Where an employee habitually refuses to pay his debts, he will be subject to appropriate disciplinary action, including removal from employment. Each case, however, will be considered on its merits and on the basis of the good faith evidenced by the employee.
The Acting Director denied the plaintiff’s request for a hearing, and denied his appeal, pointing out that plaintiff’s discharge had been carried out in accordance with valid Treasury Department regulations covering habitual nonpayment of debts, and citing the case of Carter v. Forrestal, et al., 175 P. 2d 364.
The plaintiff on May 18, 1954, obtained an affidavit from Mr. Ver derosa stating that the plaintiff had not wilfully refused or intentionally failed to pay his debt; had not intended to evade or avoid it; and was currently repaying it. This affidavit was submitted to the Acting Director of Personnel. On May 25 that official wrote a letter to the plaintiff’s counsel refusing to further consider the plaintiff’s case. In the course of the letter were the following statements.
In the consideration of his [Mr. McGuire’s] appeal I had before me his entire file, which showed that on several previous occasions creditors of Mr. McGuire had felt compelled to call the attention of his office to his indebtedness in order to obtain action from him in the payment of his debts. * * *
The Treasury Department has always moved very slowly in dismissing employees for non-payment of debts. It is only after continued efforts have been made to get an employee to arrange his affairs so that his unpaid obligations will not be frequently called to the attention of the Department that an employee is dismissed or otherwise disciplined for such matters.
In considering the events related above in their sequence, one considers first the charging letter. It quotes the Internal *21 Bevenue Service rule of conduct which says that persistent refusal or habitual neglect to pay personal and family debts will be disciplined. That rule reads like a provision for dealing with deadbeats who give their employer a bad reputation, particularly if the job of the employee is to collect from citizens the taxes which they owe to the Government. Beading on in the charging letter, one finds reference to only one debt, and wonders whether that really is a situation covered by the quoted rule of conduct. In the plaintiff’s answer and the first adverse decision and the appeal and the decision on appeal that situation persists. Then, some months after the appeal has been rejected, one learns from the May 25, 1954, letter of the Acting Director of Personnel that the case is quite different from what it had appeared to be. The plaintiff has in fact been discharged because, in the opinion of the Acting Director, he was a deadbeat. And one learns further, from the same letter, that the Treasury Department itself applies the rule of conduct only to deadbeats, that:
It is only after continued efforts have been made to get an employee to arrange his affairs so that his unpaid obligations will not be frequently called to the attention of the Department that an employee is dismissed or otherwise disciplined for such matters. [Italics added.]
It seems to us to follow, (1) that the charging letter did not state an offense within the meaning of the quoted rule of conduct as that rule was interpreted by the Treasury Department itself and (2) that the conduct upon which final action was taken, i. e., the frequent neglect to pay his debts was at no point in the proceeding charged against the plaintiff or otherwise brought to his attention for possible refutation or explanation.
The proceedings resulting in the discharge of the plaintiff were defective in fundamental respects, and did not effect his discharge. Plaintiff is entitled to recover the pay he would have earned in his Government position from the date of his discharge on January 8,1954, to the date of judgment herein. Inasmuch as plaintiff was discharged in violation of a valid Treasury Department regulation issued pursuant to section 161 of the Eevised Statutes and was not thereafter reinstated to duty, the limitations imposed by section 6(b)(1) of the *22 1948 amendment to tbe Lloyd-LaFollette Act (62 Stat. 354, 355) on tlie award of back pay are not applicable and the judgment will include any in-grade and statutory increases which plaintiff would have been entitled to during the period in suit (Crocker v. United States, 130 C. Cls. 567), plus payment for any annual leave he would have earned during that period (Hynning v. United States, 141 C. Cls. 486), less any outside earnings.
The defendant’s motion for summary judgment is denied. The plaintiff’s similar motion is granted, and judgment will be entered for the plaintiff, with the amount of the judgment to be determined pursuant to Rule 38 (c).
It is so ordered.
BastiáN, Circuit Judge, sitting by designation, and Laramore, Judge, concur.